658 So.2d 50 (1995)
In re John MERRELL.
No. 93-M-00961-SCT.
Supreme Court of Mississippi, En Banc.
June 29, 1995.
John Merrell, pro se, Parchman.
Robert Bailey, Meridian, for respondent.
En Banc.

ON PETITION FOR WRIT OF MANDAMUS
SMITH, Justice, for the Court:
John Merrell, a state prisoner, filed his request with this Court for a Writ of Mandamus pursuant to Miss.Sup.Ct.R. 21(b) in response to an adverse ruling by Robert Bailey, Circuit Court Judge of Kemper County. Judge Bailey declined to place upon the trial calendar of that court a civil suit filed by Merrell.
Merrell was convicted of the murder of his stepson in the Circuit Court of Kemper County and received a sentence of life in the custody of the Mississippi Department of Corrections. His conviction was affirmed by this Court on May 20, 1993. See Merrell v. State, 618 So.2d 1305 (Miss. 1993).
Merrell alleges that he granted Elizabeth Carroll, a friend, power of attorney to sign his personal checks and pay his bills while he was incarcerated. Merrell further alleges that Carroll used the power of attorney to mis-use "all of Petitioner's money," which consisted of approximately $21,000. Merrell filed a civil suit against Carroll, No. 3782, in the Circuit Court of Kemper County. Discovery was completed and Merrell attempted to set the case for trial. Judge Bailey, on August 16, 1993, denied the motion to place *51 the case on the trial calendar until Merrell was released from custody.
Aggrieved, Merrell filed a Petition for Writ of Mandamus requesting that this Court order Judge Bailey to place Merrell's civil case upon the trial calendar. On April 3, 1994, this Court ordered a response filed by May 20, 1994, from Judge Bailey and Carroll. Carroll failed to file a response. Judge Bailey filed his answer on May 9, 1994, stating inter alia, "Respondent requests that the Supreme Court issue some guidelines for circuit judges to follow in cases similar to this one." Although Merrell raised the single issue of ordering the trial court to place his civil case on the trial calendar, Judge Bailey's response poses the real concern for this Court's consideration  the need for this Court to furnish guidelines to the trial courts. This Court therefore addresses the following issues:
I. WHETHER THIS COURT SHOULD ORDER JUDGE BAILEY BY RULE 21 MANDAMUS TO PLACE MERRELL'S CASE ON THE TRIAL CALENDAR?
II. IF THE CASE IS SET FOR TRIAL, HOW SHOULD THE TRIAL JUDGE HANDLE THE QUESTION OF WHETHER MERRELL SHOULD BE ALLOWED TO ATTEND?
There is no need to discuss the first issue as there does not appear to be any valid reason why Merrell's case could not be placed upon the trial calendar. However, the second issue presents a more difficult question of first impression for this Court to determine. In view of Judge Bailey's request for guidance for circuit judges, it is imperative that this Court adopt guidelines that circuit judges may utilize, in their sound discretion, in considering this important question. This Court, today establishes the requested guidelines, fully acknowledging that prisoners have no absolute right to testify personally. We also continue this Court's precedent of trial judges' inherent right to control their respective trial court dockets.

DISCUSSION OF LAW

IF THE CASE IS SET FOR TRIAL, HOW SHOULD THE TRIAL JUDGE HANDLE THE QUESTION OF WHETHER MERRELL SHOULD BE ALLOWED TO ATTEND?
The standard applied to this question is that trial courts are afforded reasonable latitude in the handling of their trial dockets and calendars. This Court has long held that "[a] trial court has an inherent right to control its docket and is afforded `reasonable latitude' regarding the setting and continuance of cases." Watts v. Pennington, 598 So.2d 1308, 1312 (Miss. 1992); See also Liberty Savings & Loan Ass'n v. Mitchell, 398 So.2d 208 (Miss. 1981).
Although this is a case of first impression for this Court to consider, the question of whether to allow a prisoner to personally appear at a civil trial to which he is a party/litigant has been dealt with many times by courts in other jurisdictions. See generally Jay M. Zitter, Annotation, State Prisoner's Right to Personally Appear at Civil Trial to Which He is a Party  State Court Cases, 82 ALR 4th 1063 (1990). A summary of general principles concerning this subject was provided in Strube v. Strube, 158 Ariz. 602, 604-06, 764 P.2d 731, 733-35 (1988), wherein that court stated:
The United States Supreme Court has established that a prisoner has a constitutional right of access to the courts. Bounds v. Smith, 430 U.S. 817, 821, 97 S.Ct. 1491, 1494, 52 L.Ed.2d 72, 78 (1977). This right is founded in the due process clause of the fourteenth amendment. Wolff v. McDonnell, 418 U.S. 539, 579, 94 S.Ct. 2963, 2986, 41 L.Ed.2d 935, 964 (1974). Of course, a prisoner's right of access is not absolute. Whitney v. Buckner, 107 Wash.2d 861, 866, 734 P.2d 485, 488 (1987). However, at a minimum, due process requires that absent a countervailing state interest of overriding significance, prisoners must be afforded meaningful access to the courts and an opportunity to be heard. See Bounds, 430 U.S. at 822, 97 S.Ct. at 1495, 52 L.Ed.2d at 79; Boddie v. Connecticut, 401 U.S. 371, 377, *52 91 S.Ct. 780, 785, 28 L.Ed.2d 113, 118 (1971).
In the instant case, the court of appeals correctly noted that, under Price v. Johnston, 334 U.S. 266, 68 S.Ct. 1049, 92 L.Ed. 1356 (1948), the question of whether to permit a prisoner/litigant in a civil case to be physically present in court is within the trial court's sound discretion. However, Price also requires that:
[the trial court's] discretion is to be exercised with the best interest of both the prisoner and the government in mind. If it is apparent that the request of the prisoner to argue personally reflects something more than a mere desire to be freed temporarily from the confines of the prison, that he is capable of conducting an intelligent and responsible argument, and that his presence in the courtroom may be secured without undue inconvenience or danger, the court would be justified in issuing the writ.
Id. at 284-85, 68 S.Ct. at 1059-60, 92 L.Ed. at 1369.
The court's discretion should be exercised after balancing the interest of the prisoner against the interests of the other parties and the state, including the authorities having custody of the prisoner. Some of the factors to be considered in balancing the respective interest were set forth in Stone v. Morris, 546 F.2d 730, 735-36 (7th Cir.1976), wherein that court stated:
In making his determination the district judge should take into account the costs and inconvenience of transporting a prisoner from his place of incarceration to the courtroom, any potential danger or security risk which the presence of a particular inmate would pose to the court, the substantiality of the matter at issue, the need for an early determination of the matter, the possibility of delaying trial until the prisoner is released, the probability of success on the merits, the integrity of the correctional system, and the interests of the inmate in presenting his testimony in person rather than by deposition.
[citation omitted].
State courts that have addressed this issue have also employed a balancing test. In re Marriage of Allison, 126 Ill. App.3d 453, 81 Ill.Dec. 610, 467 N.E.2d 310 (1984), a prisoner appealed a decree of dissolution that resulted from a hearing he did not attend. The Illinois Court held that the trial court's scant consideration of the prisoner's petition for habeas corpus ad testificandum amounted to a failure to exercise its discretion. Reversing the decree, the court stated:
As a minimum, the court could have balanced the interests of the State against the interests of the respondent in, being present at the trial and could have made a reasoned exercise of its discretion in the matter.
In Hall v. Hall, 128 Mich. App. 757, 341 N.W.2d 206 (1983), the prisoner had filed a divorce action. The trial court denied his request to be present. The Michigan Court of Appeals, while acknowledging that a prisoner has no absolute right to testify personally, stated that fundamental fairness may require a court to afford the prisoner the opportunity to do so.
The court remarked:
The issue is essentially whether the plaintiff's [prisoner's] interests in presenting his testimony outweigh the state's relevant interests in withholding from him the means necessary for such a presentation. That decision, we believe, rests in the sound discretion of the trial court.
Id., 128 Mich. App. at 761-62, 341 N.W.2d at 209 (citation omitted).
The opposite view from Strube and Stone was pronounced in Clements v. Moncrief, 549 So.2d 479, 481 (Ala. 1989), citing Hubbard v. Montgomery, 372 So.2d 315, 316 (Ala. 1979), wherein the Alabama Supreme Court held:
A prisoner has no right to be removed from his place of confinement in order that he might appear and testify in his own behalf in a civil suit unrelated to his confinement. "His proper course is to take his own oral or written deposition under Rule 30 or 31, A.R.C.P., to be used at trial as specifically provided in Rule 32(a)(3)(c), A.R.C.P."
Id. 549 So.2d 479 at 481.
We recognize that this issue must be determined on a case by case basis. Trial *53 courts will be faced with cases in which the prisoner's interests are substantial, necessitating meaningful access to the courts and the opportunity to be heard. On the other hand, the trial court might well be confronted with a frivolous petition reflecting nothing more than an inmate's desire to simply spend some time outside of his normal confines. Additionally, there will be situations where a countervailing state interest significantly overrides that of the prisoner.
This Court has considered the harsh reality of absolute denial of a personal appearance by the prisoner as established in Clements with the only alternative being for the prisoner to present his testimony by deposition. This might pose a substantial problem for the pro se inmate with a legitimate substantial matter at issue. The solution presented by the Alabama Supreme Court in Clements might certainly be reasonable in appropriate cases.
However, we prefer to trust the sound discretion of the trial courts to determine when to deny all requested relief, require a deposition by a prisoner, or allow personal testimony at trial. We also recognize that there will be those cases which warrant outright denial of either method and that judges will deny some prisoners access to testify in civil litigation unrelated to their incarceration until after they are released from custody. The trial judges are in a much better posture to make this determination as compared to appellate courts. We are ever reminded of the general principles concerning this issue as stated in Strube and suggest they be appropriately applied on a case by case basis by the trial judges confronted by this question in the future.
In the final analysis, the more appropriate method for addressing this question clearly is for the trial court, in its sound discretion, to balance the interest of the prisoner against the interests of the state and other parties, including the Mississippi Department of Corrections or other authorities having custody of the prisoner. This Court therefore adopts the criteria established in Stone v. Morris as guidance for trial judges in deciding this question when confronted therewith. We do so fully acknowledging that a prisoner has no absolute right to testify personally yet when considered on a case by case basis, fundamental fairness may require a court in some instances involving substantial issues to afford a prisoner the opportunity to personally appear and testify.
Therefore, in considering whether to allow a prisoner to make a personal appearance and give testimony in a civil action wherein he is a party/litigant, the trial judge should take into consideration the following guidelines: (1) the costs and inconvenience of transporting a prisoner from his place of incarceration to the courtroom, (2) any potential danger or security risk which the presence of a particular inmate would pose to the court, (3) the substantiality of the matter at issue, (4) the need for an early determination of the matter, (5) the possibility of delaying trial until the prisoner is released, (6) the probability of success on the merits, (7) the integrity of the correctional system, (8) the interest of the inmate in presenting his testimony in person rather than by deposition, (9) consider a change of venue to the appropriate trial court in the county where the prisoner is domiciled when legally permissible, and (10) any other appropriate criteria which the trial judge, in his sound discretion, might consider.

CONCLUSION
There does not appear to be any valid reason to prohibit the placement of Merrell's civil case on the trial calendar. Judge Bailey shall place the case on the trial calendar of the Circuit Court of Kemper County. This Court is ever mindful of the possibility of frivolous cases being filed along with those of merit where a prisoner's substantial interests are involved, thereby necessitating a possible personal appearance for testimony. This Court is confident that with the guidelines furnished herein the trial judges will be able to make appropriate decisions on a case by case basis. The trial courts, due to their very nature are in a much better posture to decide this question than appellate courts.
Merrell's request for Writ of Mandamus under Miss.Sup.Ct.R. 21(b) is granted. The *54 issue of whether to allow Merrell's personal appearance to give testimony and participate in his civil case is remanded to the trial court for determination in accordance with this opinion. As Merrell's civil case is totally unrelated to his incarceration, all costs are assessed to Merrell.
WRIT OF MANDAMUS GRANTED. REMANDED TO TRIAL COURT FOR PROCEEDINGS NOT INCONSISTENT WITH THIS OPINION.
HAWKINS, C.J., DAN M. LEE and PRATHER, P.JJ., and SULLIVAN, PITTMAN, BANKS and JAMES L. ROBERTS, Jr., JJ., concur.
McRAE, J., concurs in result only.